H. C. PEEDIN v. D. B. OLIVER, W. B. OLIVER, JR., AND WIFE, MARY P. OLIVER.

(Filed 17 March, 1943.)

**1. Mortgages § 32b—**

In notices for the sale of realty under mortgages, or deeds of trust, the identical description of the land, as contained in the instrument, is not required by the provisions of C. S., 2588, and a description "substantially" as in the conveyance, is sufficient.

**2. Mortgages §§ 32c, 34c—**

The validity of a mortgage sale is not impaired by the failure of the mortgagee to make report thereof to the clerk of the Superior Court, there being no advanced bid.   C. S., 2591.

**3. Mortgages §§ 32c, 35a, 39a—**

Where a mortgagee of land purchases at his own sale, directly or indirectly, the sale is not void, but only voidable, and, ordinarily, can be avoided only by the mortgagor, or his heirs and assigns, who have the election (1) to ratify the sale and settle on that basis; or (2) to pursue one of two remedies: (a) treat the sale as a nullity and have it set aside; or (b) sue the mortgagee for the wrong and hold him liable for the true worth of the property.

**4. Mortgages § 42: Equity § 2: Estoppel § 6d—**

The estate of the mortgagee, acquired by his purchase at his own sale, being voidable only, may be confirmed by any means by which an owner of a right in equity may part with it: (1) By a release under seal.   (2) By such conduct as would make assertion of his right fraudulent against the mortgagee or a third person and which would, therefore, operate as an estoppel.   (3) By long acquiescence after full knowledge.

**5. Equity § 2: Estoppel § 6d—**

Where plaintiff, a mortgagor, attended the foreclosure sale by defendant, his mortgagee, who had the property bid off by his son and plaintiff, with full knowledge of the facts, rented the land for several years from the purchaser, who had acquired a life estate therein, allowed improvements to be made and vacated the same, after expiration of the life estate, on notice from the purchaser, all without protest for nearly eight years, his laches is such as to be fatal to any rights which he may have had.

APPEAL by plaintiff from *Stevens, J.,* at September-October Term, 1942, of JOHNSTON.

Civil action to set aside foreclosure sale and deed made pursuant thereto by defendant D. B. Oliver, as mortgagee, to defendant W. B. Oliver, Jr., as cloud upon title.

The uncontroverted facts are these:

1. Plaintiff, being in possession of a certain tract of land situated in Boon Hill and Pine Level Townships, Johnston County, North Caro-

lina, containing 53 acres more or less, of which he was "the owner in fee" subject to the life estate of his mother, with the joinder of his wife, executed to defendant D. B. Oliver a mortgage deed, dated 6 December, 1929, conveying therein the said land by specific description, as security for a certain indebtedness therein described, payable in ten equal annual installments, with interest—"the first installment to be due one year from December 6, 1929," with power of sale in the event of default in payment of installments.

2. Plaintiff was unable to, and did not pay any of the indebtedness due in the years 1930 to 1933, both inclusive, or the taxes levied on the land in the years 1929 to 1933, both inclusive.

3. Defendant D. B. Oliver, acting under the power of sale contained in the mortgage deed from plaintiff and his wife, and through his attorney, advertised the land, in the manner hereinafter shown, for sale at noon on Monday, 5 February, 1934, at the courthouse door in Smithfield, when and where the only bid submitted was $1,750.00, made in the name of W. B. Oliver, Jr., who is the son of D. B. Oliver, upon which bid the crier declared the land sold, and, pursuant thereto, and on 16 February, 1934, defendant D. B. Oliver, as mortgagee, executed and delivered to W. B. Oliver, Jr., a deed for said land, which deed is of record in office of register of deeds of Johnston County.

Plaintiff in his complaint alleges, and upon the trial below offered evidence tending to show substantially these pertinent facts: (a) The notice of sale, as published in newspaper, is as follows:

"NOTICE OF SALE. By virtue of a mortgage deed dated December 6, 1929, by H. C. Peedin and wife, Addie May Peedin, recorded in Book 243, page 86, of the Johnston County Registry, default having been made in payment of the bond hereby secured, I will on Monday, February 5, 1934, at 12 M., at the Courthouse door in Smithfield, offer for sale at public auction for cash, that certain tract of land lying in Boon Hill and Pine Level Townships, Johnston County, North Carolina, adjoining S. A. Wellons and George Worley and others, and containing fifty three (53) acres, more or less, and fully described by metes and bounds in the aforesaid mortgage. This January 5, 1934. D. B. OLIVER, Mortgagee. ED F. WARD, Attorney."

(b) Plaintiff, his wife, and his sister and her husband, attended the sale on 5 February, 1934. Defendant D. B. Oliver and his attorney, Ed F. Ward, were present. W. B. Oliver, Jr., was not present. "Just prior to the sale," and, while in front of the Courthouse preparing to make the sale, "defendant D. B. Oliver directed his attorney . . . to bid his claim and make the deed to his son, W. B. Oliver, Jr." After the attorney had read the notice of sale, he "made one bid," "and there

was no other bid." No report of the sale was filed or recorded in the office of the clerk of Superior Court.

On the other hand, defendant D. B. Oliver and defendants W. B. Oliver, Jr., and wife, in separate answers filed, deny the material allegations of the complaint, and assert that the foreclosure sale was regularly advertised and conducted and that W. B. Oliver, Jr., became the last and highest bidder, and that the sale to him is valid. Defendants further plead that the plaintiff, at the time, had full knowledge of all the facts and circumstances in connection with the foreclosure sale, and made no objection thereto, and by his conduct has since ratified the same, and is estopped to attack the validity of the foreclosure, and of the deed pursuant thereto. They further plead laches of plaintiff, and the three-year statute of limitations, C. S., 441, in bar of plaintiff's right to recover in this action.

Plaintiff in reply denies the material averments in the further answers of the defendants.

Upon the trial below plaintiff offered in evidence: (1) Deed from B. I. Peedin and wife, Hepsie Peedin, father and mother of plaintiff, to plaintiff, dated 4 April, 1910, registered 4 May, 1910, for recited consideration of $1,000.00, in which the land in question is conveyed "in fee," and which "reserves and excepts the life estate of the said B. I. Peedin and Hepsie Peedin." (2) Quitclaim deed from Hepsie Peedin to W. B. Oliver, Jr., dated 5 January, 1934, and registered, for recited consideration of $100.00, therein describing the land as in the mortgage deed from plaintiff and wife to D. B. Oliver of date 6 December, 1929; (3) summons in this action, dated 8 November, 1941, and served 12 November, 1941.

And plaintiff, in his own behalf further testified, in pertinent part, that on 6 December, 1929, and prior thereto he was in possession of the land described in the mortgage deed; that his mother had a life estate in said land; and that she did not sign the mortgage deed. Speaking directly, he testified: "I heard a conversation between Mr. Ward and Mr. Oliver. Mr. Oliver told Mr. Ward to bid off the land for what he had in it and to make the deed to 'B.' Mr. Ward read the description and cried a bid of $1,750.00, and said 'Three times and sold.' No one else bid at the sale. I applied at the Federal Land Bank for a loan in 1934, but this application was made either after the sale or was made after the sale was advertised. Mr. Oliver told me not to make an application as he did not want the money. This loan was approved for $2,175.00, which was enough to pay the mortgage. I did not get approval of the loan before the land was foreclosed by this sale. After the sale I continued to live on the land during the years 1934, 1935 and 1936. While I continued to live on the land some wood was cut, but all

of it was used on that place." Then plaintiff named those who had cut wood, approximately thirty cords, "worth about $1.50 a cord," and, continuing, said: "No timber was cut by anyone except the stovewood. The only improvements made on the place while I was there was the painting of the house by Mr. Oliver at a cost of about $50.00, so far as I know. I left the land at the end of the year 1936. My mother's name was Hepsie Peedin. She died October 6, 1936. The rental value of the land from 1929 to 1932 was $400.00 to $500.00 a year. The rental value for 1932 was $600.00." And, continuing, plaintiff further testified that W. B. Oliver, Jr., the son of D. B. Oliver was working in his father's store on 5 February, 1934, but that he did not know in what capacity, and that plaintiff "was told by 'B' that he was getting $126.00 a month and had been working in the store since he got through college."

On cross-examination plaintiff continued, by saying: " 'B' Oliver's grandfather was named W. B. Oliver, who used to own this business which is still known as 'W. B. Oliver & Son,' and is now owned by D. B. Oliver. 'B' Oliver did not own any interest in the business at the time of this mortgage sale in 1934, so far as I know . . . I applied for a Federal Land Bank loan in January, 1934, when I heard the land was going to be sold. I went to see Mr. Oliver and he told me he did not want the money. It was the land he wanted. I did not have time to get the money before the land was foreclosed . . . I rented the land from D. B. Oliver in 1934 for $100.00. It is worth more, but that is all the rent he charged. I rented it from 'B' in 1935, on shares, and also in 1936. About August, 1936, 'B' rented the land to someone else. I left at the end of that year and moved to Wayne County and stayed two years, and then moved to near Clayton, in Johnston County. About two years ago I saw they had built a pack house and a small smoke house. When I attended the sale of the land I did not make any objection to the sale or raise any question about it, and never did make any protest to anyone or tell anyone that I had or claimed any interest in the land after the sale until the institution of this action. After I left the place in 1936, I was back at the place very often. My people lived there. At the time Mr. Oliver was making improvements on the land I did not make any protest to him or claim any interest in the land. I did not know I could then."

Mrs. Annie May Peedin, wife of plaintiff, testified in part, in corroboration of plaintiff as to what D. B. Oliver told his attorney at the sale with regard to bidding and making of deed to "B," and as to improvements made on the land while they "were there."

The clerk of Superior Court testified that there is no report or record made by D. B. Oliver of the foreclosing of the mortgage deed in question.

To judgment of nonsuit at the close of plaintiff's evidence, plaintiff excepted and appeals to the Supreme Court, and assigns error.

*Parker & Lee and Wellons & Wellons for plaintiff, appellant.*
*G. A. Martin for defendants, appellees.*

WINBORNE, J.  A careful consideration of the evidence shown in the record on this appeal, taken in the light most favorable to plaintiff, fails to show error in the judgment of nonsuit entered in Superior Court. Plaintiff's challenge thereto is controlled by answer to three questions:

First: Does the notice of foreclosure sufficiently describe the land to be sold?  The answer is Yes.  While the statute, C. S., 2588, provides that "in sales of real estate under deeds of trust or mortgages it is the duty of trustee or mortgagee making such sale to fully describe the premises in the notice required by law substantially as same is described in the deed of authority under which said trustee or mortgagee makes such sale," this Court in applying this statute has held that an identical description of the land as contained in the deed of trust or mortgage is not required, and that a description "substantially" as in the conveyance is sufficient.  *Douglas v. Rhodes,* 188 N. C., 580, 125 S. E., 261; *Blount v. Basnight,* 209 N. C., 268, 183 S. E., 405.

In the case in hand, though the notice of sale does not contain the specific description as is set out in the mortgage, it recites that it is by virtue of a mortgage deed, names the mortgagors, gives the date and the book and page of the registry where the mortgage deed is recorded, and describes the land as "lying in Boon Hill and Pine Level Townships, Johnston County, North Carolina, adjoining S. A. Wellons and George Worley and others, and containing 53 acres more or less, and fully described by metes and bounds in the aforesaid mortgage."  This is sufficient to inform the public of the land to be sold, and to enable intending purchasers, in the exercise of ordinary diligence, to identify the land.  In fact, plaintiff and his wife, and his sister and her husband were sufficiently informed, for they were present at the time and place named for the sale, and knew what land was being sold.

Second: Is the validity of the sale impaired by the failure of the mortgagee to make report thereof to the clerk of Superior Court—there being no advanced bid?  The statute, C. S., 2591, and decisions of this Court provide a negative answer.  See *Pringle v. Loan Assn.,* 182 N. C., 316, 108 S. E., 914, and *Dillingham v. Gardner,* 219 N. C., 227, 13 S. E. (2d), 478, and cases cited therein.

Third: Conceding that there is evidence tending to show, or from which it may be inferred that defendant, D. B. Oliver, mortgagee, in the name of his son, W. B. Oliver, Jr., bid, and became the purchaser of

the land at the foreclosure sale, has plaintiff, by his conduct as shown by the evidence taken in the light most favorable to him, ratified or confirmed the sale? Has he been guilty of laches in asserting his equitable. rights in the land? An affirmative answer to each question is appropriate.

The uniform decisions of this Court, on the subject, hold that where a mortgagee of land purchases at his own sale, directly or indirectly, the sale is not void, but only voidable, and, ordinarily, can be avoided only by the mortgagor or his heirs and assigns. *Joyner v. Farmer,* 78 N. C., 196; *Whitehead v. Whitehurst,* 108 N. C., 458, 13 S. E., 166; *Averitt v. Elliott,* 109 N. C., 560, 13 S. E., 785; *Shuford v. Bank,* 207 N. C., 428, 177 S. E., 408; *Davis v. Doggett,* 212 N. C., 589, 194 S. E., 288; *Council v. Land Bank,* 213 N. C., 329, 196 S. E., 483; *Smith v. Land Bank,* 213 N. C., 343, 196 S. E., 481; *Mills v. B. & L. Assn.,* 216 N. C., 664, 6 S. E. (2d), 549.

The mortgagor, in such case, has the election (1) "To ratify the sale and accept the proceeds, or settle on that basis"; or (2) to pursue one of two remedies: (a) he "may treat the sale as a nullity and have it set aside"; or (b) acting in repudiation of the sale, he may sue the mortgagee for the wrong done in making such a sale, and hold him liable for the true worth of the property. *Froneberger v. Lewis,* 70 N. C., 456, and 79 N. C., 426; *Brothers v. Brothers,* 42 N. C., 150; *Patton v. Thompson,* 55 N. C., 285; *Bruner v. Threadgill,* 88 N. C., 361; *Burnett v. Supply Co.,* 180 N. C., 117, 104 S. E., 137; *Council v. Land Bank, supra; Smith v. Land Bank, supra.* See also *Harris v. Hilliard,* 221 N. C., 329, 20 S. E. (2d), 278.

Nevertheless, the estate of the mortgagee acquired by the sale, being voidable only, may be confirmed by any of the means by which an owner of a.right in equity may part with it: (1) By a release under seal. (2) By such conduct as would make assertion of his right fraudulent against the mortgagee or against third persons, and which would, therefore, operate as an estoppel against its assertion. (3) By long acquiescence after full knowledge. *Joyner v. Farmer, supra; Shuford v. Bank, supra; Council v. Land Bank, supra.* See also *Hare v. Weil,* 213 N. C., 484, 196 S. E., 869; *Wolfe v. Land Bank,* 219 N. C., 313, 13 S. E. (2d), 533.

Applying these principles to the facts in the instant case, it is apparent that plaintiff, with full knowledge of how the sale was conducted, has by his conduct, and long acquiescence ratified the sale, and is now estopped to challenge the validity of it. Summary of the evidence manifests clear intention of plaintiff to recognize the sale and to treat purchaser as the landlord, and to assume for himself the role of tenant. Plaintiff attended the sale and heard D. B. Oliver, the mortgagee, direct his attorney, who cried the sale, "to bid his claim and make deed to his

son, W. B. Oliver, Jr." He knew that, upon a bid of $1,750.00, W. B. Oliver, Jr., was declared to be the purchaser of the land, and that, pursuant to the sale, deed therefor was made to W. B. Oliver, Jr. Thereafter, although he obtained the approval of a loan from the Land Bank in sufficient amount to pay the indebtedness secured by the mortgage deed, and for which the land was sold, as well as the unpaid taxes levied on the land, the evidence fails to show that he made any demand, or effort to redeem. On the other hand, he rented the land from D. B. Oliver for the year 1934 for a cash rental, and from W. B. Oliver, Jr., for the year 1935, and again for the year 1936 on crop-sharing plan. He saw the house painted at the expense of Oliver, and saw wood cut from the land. He knew that in August, 1936, before his mother died in October, 1936, W. B. Oliver, Jr., rented the land to someone else for the year 1937. He vacated the land, after the death of his mother, upon notice from W. B. Oliver, Jr. He saw that a pack house and small smoke house had been built on the land. And, in the face of these facts, and with this knowledge, he says, "I did not make any objection to the sale or raise any question about it, and never did make any protest to anyone or tell anyone that I had or claimed any interest in the land after the sale until the institution of this action." Nearly eight years elapsed between those dates. Acquiescence by plaintiff for so long a period, in the light of the circumstances and of his conduct, is such laches as should prevent a repudiation of the sale at this date—irrespective of any statute of limitation. *Teachey v. Gurley*, 214 N. C., 288, 199 S. E., 83. See also *Jones v. Stewart*, 212 N. C., 228, 193 S. E., 143; *Wolfe v. Land Bank, supra.* As stated by *Barnhill, J.,* in the *Teachey case, supra,* "Under such circumstances, one whose laches is so pronounced cannot successfully seek relief in a court of equity."

Plaintiff, however, contends that in view of the fact that his interest in the land was subservient to the outstanding life estate which defendant W. B. Oliver, Jr., acquired on 5 January, 1934, and under which Oliver was entitled to possession, his renting of the land should be taken to be under Oliver's ownership of the life estate, rather than under the title acquired by him at the mortgage sale. Even so, the undisputed facts are that plaintiff, in obedience to a notice from W. B. Oliver, Jr., vacated the land after the expiration of that life estate, and, with full knowledge, revealed by the facts hereinbefore stated, remained silent and made no protest for nearly five years, and until the institution of this action. Such neglect under the circumstances is fatal to any rights which he may have had.

The judgment below is

Affirmed.